**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CURTIS WINSTEAD, | ) | Civil Action No. 2:25-cv-00731-KT |
| Plaintiff, | ) | District Judge Nora Barry Fischer |
| v. | ) | Magistrate Judge Kezia O. L. Taylor |
| WELLPATH, *et al.*, | ) | |
| Defendants. | ) | ECF No. 31 |

**REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

Pending before the Court is DOC Defendants' Motion to Dismiss. ECF No. 31. For the reasons that follow, it is respectfully recommended that the motion be granted in part and denied in part. Particularly, it is recommended that the motion be granted with respect to the Eighth Amendment claims against Defendant Karpency; however, it is further recommended that Plaintiff be given an opportunity to file an amended complaint regarding his claims against this defendant. It is recommended that the motion be denied with respect to the Eighth Amendment claims against Defendants Dulic and Shaffer. If the Court adopts this recommendation on the motion to dismiss, then it is further recommended that Plaintiff's deadline to file an amended complaint be stayed until the Court has ruled on the pending motions to dismiss filed by medical Defendants Wellpath, Chang and Fetterman.[1]

[1] Defendants Wellpath, Chang and Fetterman have dispositive motions pending at ECF Nos. 44 and 54, which will be ripe for review in December 2026. Those motions will be addressed by separate Reports and Recommendations.

## II. REPORT

### A. PROCEDURAL BACKGROUND

Curtis Winstead ("Plaintiff") initiated the instant *pro se* prisoner's rights action on May 28, 2025, by filing a Motion for Leave to Proceed *in forma pauperis*. ECF No. 2. Plaintiff's Complaint was received the next day. ECF No. 1. On June 2, 2025, Plaintiff's Motion for Leave to Proceed *in forma pauperis* was granted, ECF No. 4, and the Complaint was docketed that same day. ECF No. 6.

DOC Defendants waived service, ECF Nos. 13, 16, and on December 22, 2025, filed a Motion to Dismiss and Brief in Support, ECF Nos. 24, 25. Thereafter, on January 13, 2026, Plaintiff filed a Motion for Leave to File Amended Complaint, ECF No. 27, with a proposed amended complaint attached. The motion was granted by Order entered on January 15, 2026, ECF No. 28, and Plaintiff's Amended Complaint, ECF No. 29, was docketed that same day. DOC Defendants then filed a Motion to Dismiss and Brief in Support, ECF Nos. 31, 32, on January 29, 2026. Plaintiff responded to the motion on March 2, 2026. ECF Nos. 38, 39. Accordingly, DOC Defendants' motion is now ripe for consideration.

### B. FACTUAL ALLEGATIONS[2]

Plaintiff was previously in the custody of the Pennsylvania Department of Corrections ("DOC") and confined at the State Correctional Institution at Greene ("SCI-Greene"). ECF No. 29 ¶ 2. DOC Defendants are individuals employed by the DOC and assigned to SCI-Greene. *Id.*

[2] The following factual recitation will only address those claims asserted against DOC Defendants Karpency, Dulic and Shaffer.

¶¶ 6 (Nurse Karpency), 12 (C.O. Dulic[3]), 13 (C.O. Shaffer). Plaintiff alleges that on September 21, 2024, he became "dizzy nauseous and very ill and returned to his cell from dayroom activities," where he became unconscious. *Id.* ¶¶ 17-18. After his cellmate notified corrections staff, Sergeant Blanchard came to Plaintiff's cell and "took the plaintiff's pulse and noticed that it was very 'thready' and [ ] called the medical Department for assistance." *Id.* ¶¶ 19-20. While waiting for medical personnel, several officers from SCI-Greene's Security Office reported to Plaintiff's cell. *Id.* ¶ 21. The security officers did not render first aid, believing that Plaintiff had ingested drugs. *Id.* ¶¶ 22-23.

When medical personnel – including Nurse Karpency – arrived at Plaintiff's cell, they "immediately advised [the security officers] that they believed that the plaintiff was suffering a stroke and needed immediate medical treatment." *Id.* ¶¶ 24. Still believing that Plaintiff had overdosed on drugs, the Security Lieutenant directed that Plaintiff be given several doses of Narcan. *Id.* ¶¶ 26-27. After Plaintiff failed to respond to the Narcan, Sergeant Blanchard called for an ambulance, which arrived "[a]pproximately forty (40) minutes later" and transported Plaintiff to UPMC-Washington." *Id.* ¶¶ 29-30.

After being admitted to the hospital, Plaintiff "was instructed by his treating physician that his lack of care in monitoring his blood sugar levels was likely what lead to the stroke." *Id.* ¶ 31. "As a result of the stroke, the plaintiff was partially paralyzed on his right side and couldn't see out his right eye" and became dependent "upon DOC personnel to assist him in

---

[3] Plaintiff uses a different spelling of this Defendant's name in his Amended Complaint. To avoid confusion, the Court will use the spelling of this Defendant's name as it appears on the docket.

using the bathroom facilities." *Id.* ¶ 32. Medical tests done at the hospital "showed that the Plaintiff had not ingested any type of narcotic prior to the stroke." *Id.* ¶ 30.

On September 24, 2024, Defendants Dulic and Shaffer were assigned to guard Plaintiff while he was still at UPMC-Washington. *Id.* ¶ 33. Plaintiff alleges that after Defendants Dulic and Shaffer were falsely advised by a nurse that Plaintiff "was diagnosed with tuberculosis" and "that he (plaintiff) was highly contagious to them," they refused "to come near the plaintiff and he was forced to urinate and defecate in his bed as he was unable to move without their assistance." *Id.* ¶¶ 34-35. Defendants Dulic and Shaffer also "refused to allow the plaintiff to move from his bed and he was forced to lie in his own urine and feces for a period exceeding six (6) hours." *Id.* ¶ 36.

Later, after his return to SCI-Greene, Plaintiff was taken to the medical department on March 28, 2025, after "the plaintiff lost feeling in his legs and crashed into a wall of [his housing] unit head first." *Id.* ¶ 48. Plaintiff was assessed by a Physician's Assistant, who "ordered Nurse Karpency to give the plaintiff a dose of 'Narcan' when the Plaintiff was clearly was not suffering from a overdose." *Id.* ¶ 53. After Nurse Karpency questioned the order, the Physician's Assistant "discontinued the 'Narcan' order and said 'send him out to UPMC-Washington." *Id.* ¶¶ 54-55.

Plaintiff contends that the foregoing allegations establish that the actions of Nurse Karpency and other medical personnel "in denying immediate medical care" for his stroke on September 21, 2024, "constitutes deliberate indifference and cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution." *Id.* ¶ 61. Plaintiff further contends that the refusal of Defendants Dulic and Shaffer to allow Plaintiff to "change his

clothing and bed linen and forcing him to lie in his own urine and feces for a period exceeding six hours" also "result[ed] in cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution." *Id.* ¶ 62.

**C. <u>LEGAL STANDARD</u>**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). Because Plaintiff is proceeding *pro se*, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). The "court[ ] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering a motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004) (*citing In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (*citing* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Id.* 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (*citing Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

Expounding on the *Twombly* and *Iqbal* line of cases, the Third Circuit has articulated this three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (*quoting Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The Court recognizes that in a civil rights action, when dismissing a case for failure to state a claim, a court must allow the plaintiff to amend a deficient complaint, regardless of whether the plaintiff requests to do so, unless amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

## D. DISCUSSION

The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege: (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104. *See also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official manifests deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05. Indeed, the Third Circuit has

> found deliberate indifference in a variety of contexts including where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs.

*Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). However, "a prisoner has

no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000).

DOC Defendants first seek dismissal of Plaintiff's Eighth Amendment claim based on Nurse Karpency's interaction with Plaintiff on September 21, 2024, claiming that Plaintiff has not adequately alleged this defendant's personal involvement in the asserted violation. *See* ECF No. 32 at 6-7. It is well established that for liability to attach in a civil rights action, a defendant must have been personally involved in the alleged wrongs. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). This requirement may be satisfied by allegations of direct participation, personal direction, or actual knowledge and acquiescence, which must be made with appropriate particularity. *Id. See also C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (*en banc*)).

Plaintiff makes no allegations in his Amended Complaint against Nurse Karpency with the required particularity that would establish that he directly participated, personally directed, or otherwise acquiesced in an alleged wrong. Indeed, as DOC Defendants argue, "[t]here are no allegations to suggest any wrongdoing on the part of Defendant Karpency." ECF No. 32 at 7. Rather, at best, Plaintiff's allegations only establish that Nurse Karpency was present at Plaintiff's cell on September 21, 2024.

DOC Defendants' argument is well taken. While Plaintiff's allegations place Nurse Karpency at Plaintiff's cell while he was unconscious and non-responsive on September 21, 2024, he does not attribute any unconstitutional or unlawful act to this defendant. Thus,

dismissal is warranted where Plaintiff has not alleged that Nurse Karpency denied a reasonable request for medical treatment, intentionally refused to provide needed medical care or otherwise delayed for non-medical reasons, or prevented Plaintiff from receiving recommended treatment.

However, because the Court cannot conclude that there is no set of facts that would absolve Nurse Karpency from involvement in a constitutional violation, such dismissal will be without prejudice to the filing of an amended complaint wherein Plaintiff may provide additional allegations to establish this defendant's personal involvement. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002) ("plaintiffs whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile").

DOC Defendants also seek dismissal of Plaintiff's claim based on Nurse Karpency's interaction with Plaintiff on March 28, 2025. *See* ECF No. 32 at 7-8. However, the allegations supporting this claim appear to be directed at the Physician's Assistant – Defendant Fetterman – rather than Nurse Karpency. Indeed, Plaintiff acknowledges that the Narcan order was discontinued after Nurse Karpency voiced an objection and Plaintiff was then transported to the hospital. ECF No. 29 ¶¶ 53-55. Additionally, in his Claims for Relief, Plaintiff only includes Nurse Karpency in the claim related to the initial incident on September 21, 2024, when he was discovered unconscious in his cell. *Id.* ¶ 61. Nevertheless, because it is recommended that the claim arising from the September 21, 2024 incident be dismissed without prejudice, it is recommended that Plaintiff also be afforded the opportunity to amend his complaint to include any additional allegations or claims against Nurse Karpency related to the March 28, 2025 encounter.

DOC Defendants also contend that Defendants Dulic and Shaffer are entitled to dismissal because the deprivation alleged by Plaintiff was not sufficiently serious to establish a violation of the Eighth Amendment due to its limited duration. ECF No. 32 at 9-10. The Eighth Amendment also "prohibits any punishment which violates civilized standards and concepts of humanity and decency," including deprivations of "the minimal civilized measure of life's necessities." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)). To violate the Eighth Amendment, the conditions must pose a "substantial risk of serious harm," and the relevant "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). As the Third Circuit has explained,

> To determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test: (1) the deprivation must be "objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities"; and (2) the prison official must have been "deliberate[ly] indifferen[t] to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal citations and quotation marks omitted). An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837, 114 S.Ct. 1970. Whether conditions constitute "cruel and unusual punishment" is measured against "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)).

*Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020).

While DOC Defendants correctly observe that "there are numerous cases where alleged deprivations of food, clothing, mattresses, etc lasting for several days were found to be insufficient for a conditions of confinement claim," ECF No. 32 at 10, courts have nevertheless

distinguished those cases involving direct exposure to or contact with human waste. *See McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) ("Human waste has been considered particularly offensive so that 'courts have been especially cautious about condoning conditions that include an inmate's proximity to [it]'") (quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("[E]xposure to human waste carries particular weight in the conditions calculus"). *See also Berkshire v. Dahl*, 928 F.3d 520, 538 (6th Cir. 2019) (defendant officer had fair notice that denying the plaintiff a bathroom break and forcing him to lay in his own urine and feces for several hours without a penological purpose could rise to the level of an Eighth Amendment violation); *Havens v. Clements*, 2014 WL 1213804, at *6-*7 (D. Colo. Mar. 24, 2014) (holding that an inmate's allegation that he was forced to lay in his own feces for hours "was sufficient to meet the objective prong of the Eighth Amendment analysis," notwithstanding that the inmate "was exposed to the unsanitary conditions for hours, as opposed to days. . . .").

In *Drayton v. McIntyre*, 2023 WL 7300751 (M.D. Pa. Nov. 6, 2023), our sister court screened a *pro se* federal inmate's complaint pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A. The court determined that with respect to allegations that the inmate "was placed in four-point restraints without an opportunity to eat or drink or use the restroom for approximately 24 hours" and "that he eventually urinated himself and had to lay in his own urine for twelve hours," when "taken as true, sufficiently state[d] an Eighth Amendment claim." *Id.* at

*3.[4] Thus, DOC Defendants' contention that the deprivation alleged by Plaintiff was *de minimus* is unavailing.

DOC Defendants' argument that Plaintiff's admission that Defendants Dulic and Shaffer had been falsely told that Plaintiff had tuberculosis precludes a finding of deliberate indifference is likewise unavailing. Again, Plaintiff's allegations that Defendants Dulic and Shaffer "refused to allow the plaintiff to move from his bed and he was forced to lie in his own urine and feces for a period exceeding six (6) hours," ECF No. 29 ¶ 36, are sufficient at this stage of the proceedings to state a conditions-of-confinement claim under the Eighth Amendment. Thus, based on the foregoing, it is recommended that DOC Defendants' motion be denied to the extent it seeks dismissal of Plaintiff's Eighth Amendment claims against Defendants Dulic and Shaffer.

## III. <u>CONCLUSION</u>

For the above reasons, it is recommended that DOC Defendants' Motion to Dismiss be granted in part and denied in part. It is recommended that the motion be granted with respect to the Eighth Amendment claims against Defendant Karpency; however, it is further recommended that Plaintiff be given an opportunity to file an amended complaint regarding his claims against this defendant. It is recommended that the motion be denied with respect to the Eighth Amendment claims against Defendants Dulic and Shaffer. If the Court adopts this recommendation on the motion to dismiss, then it is further recommended that Plaintiff's

---

[4] After service, the defendant's motion to dismiss was granted where the inmate's "Eighth Amendment conditions-of-confinement claim represent[ed] a new *Bivens* context, and special factors counsel[ed] against an extension of the *Bivens* remedy to this new context." *Drayton v. McIntyre*, 2024 WL 2214681, *5 (M.D. Pa. May 15, 2024) (citing *Hill v. Lappin*, 561 F. Supp. 3d 481, 486-88 (M.D. Pa. 2021)). Nevertheless, this result does not undermine the court's initial conclusion that the allegations stated a claim under the Eighth Amendment.

deadline to file an amended complaint be stayed until the Court has ruled on the pending motions to dismiss filed by medical Defendants Wellpath, Chang and Fetterman.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: August 6, 2026

**BY THE COURT**

s/ Kezia O. L. Taylor
KEZIA O. L. TAYLOR
United States Magistrate Judge

CURTIS WINSTEAD
142 LENOX STREET
UNIONTOWN, PA 15401